**COSCHOCTON GLOVE CO. v. BUCKEYE GLOVE CO.**

Patent Appeal No. 3796.

Court of Customs and Patent Appeals.
June 21, 1937.

George E. Kirk, of Toledo, Ohio, for appellant.

Charles W. Owen, of Toledo, Ohio (Owen & Owen, of Toledo, Ohio, of counsel), for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GARRETT, Associate Judge.

This is a trade-mark interference proceeding in which, by appeal, appellant brings to us for review the decision of the Commissioner of Patents, speaking through the Assistant Commissioner of Patents, awarding priority and adjudging right of registration to appellee, this being a reversal of the decision of the Examiner of Interferences.

The mark sought to be registered by both parties consists of the word "Buckeye" for use on work gloves. Specifically, appellant's application recites "for Work Gloves and Work Mittens of fabric, leather and combinations thereof," while the petition of appellee recites, "for work gloves of fabric, leather, and combinations thereof."

Appellant's application, serial No. 311,-721, was filed March 4, 1931. It was twice amended, and, in its amended form, alleged use of the word "since as early as March,

1928." The application seems to have stood rejected ex ·parte by the Examiner, upon certain references not here important, for a long period, and the record is not clear as to just when the word was finally determined ex parte to be registrable. The declaration of interference recites that notice of appellant's application was published May 1, 1934.

The application of appellee, serial No. 351,795, was filed May 24, 1934, with use alleged by it and its predecessors "since as early as November 1st, 1930," which was prior to appellant's filing date. From the interference declaration it is learned that notice of . appellee's application was published August 14, 1934. Apparently, no opposition proceeding was instituted by appellant.

It may here be said that appellant before us raises a question as to appellee's derivation of title. The record bearing upon this has been examined with the result that we do not think appellant's contention upon this point should be sustained.

It appears from a letter of the Examiner, under date of June 15, 1934, that appellee at some time following the filing of its application requested interference with the application . of appellant, and in this letter the Examiner further said:

"The application [of appellee] is being passed to publication. At the end of the publication period, this application and Serial No. 311,721 will be forwarded to the Interference Division of this Office.

"Action in application Ser. No. 311,721 is being suspended for a period of sixty days, and said applicant is being notified."

The record contains a letter from the attorney for appellant, filed September 17, 1934, in which it was said: "In Office action of June 20, 1934, this case was suspended for a period of sixty days. Inasmuch as the case has passed publication on May 1, 1934, without opposition, it is asked that further delay not occur herein and that this case be passed to registration forthwith."

Both parties took testimony, and various documentary exhibits were filed on behalf of both. It is not found necessary to review the evidence in detail. It is sufficient to say that it established use of the mark by appellant prior to its use by appellee, but appellant's use of it was as a *grade* mark, not as a technical *trade-mark,* while appellee used it as a technical *trade-mark.*

Appellant's trade-mark is "Co-Shoc," and an exhibit on file shows it prominently displayed in an oval which contains a picture of a bear, beneath which are the words "a bear for wear." The words "Big Bear" appear in parentheses in the oval beneath "Co-Shoc" and above the bear picture. Also in the oval are the words "work gloves," the first word to the left and the last to the right of the picture. Underneath the oval, contacting with its lower edge, is a strip upon which is imprinted the word "Buckeye." The evidence shows that, upon other types of appellant's gloves, instead of "Buckeye," the respective strips bear the imprints "The Colonel," "Skout," "Storm King," etc. Appellant is shown to have made many different types of glove.

The Examiner of Interferences held, in effect, that the use of the mark "Buckeye" by appellant constituted both a grade mark and trade-mark use, citing Williams Evangeline Confection Co. v. U. R. S. Candy Stores, 54 App.D.C. 68, 294 F. 999, 1000, and Paris et al. v. W. W. Stewart & Sons, 57 App.D.C. 95, 17 F.(2d) 683, and also our case of John Wood Manufacturing Co. v. Servel, Inc., 77 F.(2d) 946, 22 C.C.P.A. (Patents) 1370. . The Commissioner points out that the latter case was an opposition proceeding. It may also be pointed out that the. Paris v. Stewart & Sons Case, supra, was a cancellation proceeding. The other case so cited was an interference proceeding involving the mark "Evangeline" for candy, but it appeared there that, in the words of the court: "By that name the candy has been ordered, by the trade and sold by the retailers. *No other mark has been used on the carton.* Nor has any witness said it was ever treated as a grade mark. The name, in our judgment, clearly indicates origin of the candy." (Italics ours.)

In other words, the court there found that the use of the mark was a trade-mark use. We agree with the Commissioner that such a finding as to use of the instant mark by appellant would not be justified by the record before us.

We are, however, unable to agree with the Commissioner as to certain other declarations in his decision.

In the case of Wood Manufacturing Co. v. Servel, Inc., supra, an opposition proceeding, we sustained the Commissioner of Patents in holding, in effect, that the use

by the appellee there of a word as a grade mark, or identification mark, for refrigerators precluded the appellant in that case from obtaining registration of the word as a trade-mark upon goods of the same descriptive properties.

Referring to that case, the Commissioner, in his decision in the instant case, said: "The distinction between that case and this lies in the fact that the prevailing party to an interference must necessarily be entitled to registration of his mark, whereas an opposer need only prove that he would be damaged by registration to his adversary."

It is not understood just what is meant by the phrase "prevailing party," as used in the foregoing holding. If it be meant that upon a mere showing of priority in use of a mark, with a claim of ownership, the party making such showing and claim becomes the prevailing party and thereby necessarily entitled to register the mark, we are unable to agree.

Section 7 of the Trade-Mark Registration Act (15 U.S.C.A. § 87), so far as pertinent to the issues of this case, reads:

"Whenever application is made for the registration of a trade-mark * * * for registration of which another has previously made application * * * the commissioner * * * may declare that an interference exists as to such trade-mark, and in every case of interference * * * he shall direct the examiner in charge of interferences to determine the question of the *right of registration.* * * *

"The commissioner *may refuse to register* * * * *both of two interfering marks,* or may register the mark, as a trade-mark, for the person first to adopt and use the mark, *if otherwise entitled to register the same.*" (Italics ours.)

It is fundamental that ownership of a mark is a prerequisite to its registration, and it seems to us that, if it develops during the hearing of an interference proceeding that ownership may not be claimed by either party thereto, it becomes the duty of the Commissioner, or the officials acting for the Commissioner, so to declare and deny registration to both.

One distinction between a trade-mark interference proceeding and a trade-mark opposition proceeding is that in the latter one does not have to show ownership of a mark in order successfully to oppose its registration to another, while in the former (which does not involve any question of damage) ownership by one or the other of the parties must be established in order to secure registration. The sustaining of an opposition is equivalent to a holding that the party seeking to register is not the owner of the mark, but it does not follow that the opposing party necessarily is the owner.

There are, to be sure, certain questions which a Primary Examiner must determine before an interference may be declared. Patent Office Rule 51 provides:

"51. Before the declaration of interference, all preliminary questions must have been settled by the examiner in charge of trade-marks, and the trade-mark which is to form the subject matter of the controversy must have been decided to be registrable, and must have been published at least once in the Official Gazette of the Patent Office."

The preliminary questions so required to be determined are determined in the light of the Patent Office records only, and, in the very nature of things, the finding by a Primary Examiner that a mark is registrable is tentative. He cannot know what facts outside the Patent Office records subsequently may be shown which will affect the *right of registration.*

Section 7, supra, clearly makes it the duty of the Examiner in charge of interferences, and ultimately of the Commissioner upon appeal to him, "to determine the question of the right of registration." We think this brings before them for consideration all the questions originally passed upon by the Primary Examiner and all facts which may be developed in the trial of the interference, including, as of course, the fundamental question of ownership.

If it be found in the case at bar that a state of facts exists which precludes both parties from claiming ownership of the mark, of what avail is an award of priority to either? Indeed, how can there be an award of priority, in the meaning of the statute, where there is no ownership? Incidentally, it may be remarked that the decision of the Commissioner in this case not only adjudges appellee "to be the prior user of the mark," but further declares that it is "entitled to the registration thereof."

Notwithstanding this, the suggestion was offered during the hearing and considera-

tion of this case by us that, should the decision of the Commissioner be affirmed, appellant might still oppose the registration in an opposition proceeding. That is a matter upon which we need not pass here, but it may be pointed out that the statute requires that notice of opposition shall be filed "within thirty days after the publication of the mark sought to be registered" (15 U.S.C.A. § 86), and that, according to the record, as has been already recited, notice of appellee's application was published August 14, 1934.

Also, it was suggested that the way would be open to appellant, after appellee's mark be registered, to institute cancellation proceedings. It is not our province in this proceeding to consider that question, nor do we regard it necessary even were we at liberty so to do.

■ It is our view that, under the facts developed here, neither party has shown itself entitled to claim ownership and, therefore, exclusive use of the mark. Appellant did not own the mark at the time of filing its application because it had not used it as a technical trade-mark. This it did not attempt to do prior to the date claimed by appellee. On the other hand, appellee, at the time it claims to have adopted the mark, had no right to appropriate it to its exclusive use because of appellant's prior use of it to indicate a grade, or model, of its merchandise. Wood Manufacturing Co. v. Servel, Inc., supra.

Such being the case, we think it was the duty of the Commissioner to exercise the authority vested in him by section 7, supra, and refuse registration to both parties, which automatically would have dissolved, or vacated, the interference.

It has been the long-settled practice for the Commissioner, in an opposition proceeding, to determine, ex parte, and without reference to issues raised by the notice of opposition, that a proposed mark is not subject to registration. There is no express provision for this in section 6 of the Trade-Mark Registration Act, as amended, the section providing for opposition proceedings, but in section 7 it is provided that "in

every case of interference or opposition to registration" the Commissioner "shall direct the examiner in charge of interferences to determine the question of the right of registration * * * and of the sufficiency of objections to registration." Also, it is said "The commissioner may refuse to register the mark against the registration of which objection is filed," and, as has been seen, the section contains the express provision that the Commissioner "may refuse to register both of two interfering marks," which necessarily means denial of registration to both parties.

■ A further suggestion has been offered that, to reach the conclusion which we have reached, it is necessary for us to pass upon questions not considered by the tribunals below and not raised in the reasons of appeal. So far as this may seem to be correct, it is sufficient to say that the questions which we decide are inherent in the case and hence should have been considered below. Had they been considered and passed upon there, the conclusion of both the Examiner of Interferences and the Commissioner of Patents might have been different, and, upon any appeal taken, the reasons of appeal would have been stated in accordance with the issues resulting from the decision.

We have no doubt of this court's authority to take the course here taken, and regard it our duty to construe the statute and point out what we consider its proper application to the facts of the case.

■ Since the decision of the Commissioner in this case reversed the decision of the Examiner of Interferences, the end which, in our opinion, should be reached, cannot be attained through the mere reversal by this court of the Commissioner's decision. That, in legal effect, would amount to a reinstatement of the decision of the Examiner of Interferences which, we think, was also erroneous. The order is, therefore, that the decision of the Commissioner of Patents be reversed and the cause remanded, to the end that proper entries may be made in the Patent Office in accordance with the views herein expressed.

Reversed and remanded.