31 C.C.P.A. (Patents)

## In re LANGSNER.
### Patent Appeal No. 4807.

Court of Customs and Patent Appeals.
Dec. 7, 1943.

Spencer, Marzall, Johnston & Cook and John A. Marzall, all of Chicago, Ill. (Benton Baker, of Chicago, Ill., Francis B.

Leech, of Washington, D. C., and Junius F. Cook, Jr., of Chicago, Ill., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

LENROOT, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Primary Examiner rejecting claims 9, 10, 11, 13, 14, and 17 to 23, inclusive, of appellant's application for a patent.

The claims were rejected upon the ground that there is no patentable distinction between them and a count, No. 5, of an interference between a copending application of appellant and an application of another party. The interference had not been terminated when this appeal was taken. Said count 5 of the interference corresponded to original claim 8 of appellant's instant application. It had been allowed in the application before us, but was cancelled therefrom and thereafter transferred to said copending application.

Count 5 of the interference reads as follows: "5. In a parallel motion apparatus of the character mentioned, means comprising an arm having pulleys spaced apart thereon, flexible driving means on said pulleys, a spring connected on said flexible means and adjustably anchored on said arm under tension to urge said flexible means in one direction on said pulleys, manually operable means to adjust the anchorage of said spring, comprising a member shiftable on said arm and connected with said spring, and means to secure said shiftable member in adjusted position on said arm."

Claim 9 is illustrative of the subject matter of the rejected claims and reads as follows: "9. In a parallel motion apparatus of the character mentioned, the combination with means comprising an arm having pulleys spaced apart thereon, flexible driving means on said pulleys, and a spring connected with said flexible means and anchored on said arm to urge said flexible means in one direction on said pulleys, of means to adjust the anchorage of said spring on the arm, comprising a member shiftable on said arm and connected with said spring and means to secure said shiftable member in adjusted position on said arm *comprising manually operable detent latch means operatively connected between said arm and said shiftable member.*" (Italics supplied.)

It will be observed that said count 5 is substantially the same as the above quoted claim 9, except as to the italicized portion of said claim.

The subject matter of the issue before us is concisely stated in appellant's brief as follows: "The disclosure of the instant application relates to drafting apparatus employing a protractor and a parallel motion mechanism which is adapted for attachment on a drawing board or a table to support a ruling guide or straight edge so as to be freely movable within a given drafting area, particularly on a tilted board or table. The claims involved relate to means for preventing the ruling element from sliding downwardly; that is, for maintaining the ruler in positions of adjustment against the gravitational tendency due to the tilting of the board or table."

It was held by the examiner that the rejected claims differ from said count 5 only as to the provision of latching means and keeper means, and that such means are shown in the following references:

Valentine et al., 84,919, December 15, 1868.

Yeager, 782,478, February 14, 1905.

The patents to Yeager and Valentine each disclose in clothesline reels means for tightening a clothesline by use of a pulley having a crank and means for holding it in adjusted position by use of a detent and keeper.

The examiner held that in view of these references there was no invention in the involved claims over the invention set forth in said count 5 of the interference.

In his statement on appeal the examiner said: "These claims differ from the issue only as to the provision of latching means and keeper means of the type and for the purpose disclosed by Valentine et al and Yeager. The purpose of the adjusting means—namely, to adjust the tension in a flexible cable, rope or wire member and maintain the desired tension by latch and keeper means is the same as in applicant's device. Claim 11 calls for a 'spring pressed latch means.' To provide spring means for pressing the detents of the

reference devices into position is an obvious expedient. With regard to Claim 20, the handle in each of the reference devices corresponds to the 'lever'."

The Board of Appeals in its decision stated: "Applicant's improvement as set out in these claims over this interference count appears to reside not in a new combination but in the specific structure of the manually operable adjusting means for the flexible means or the spring tension exerted thereon. This specific structure of the adjusting means is considered not to differ patentably from the winding mechanisms referred to by the examiner in the patents to Yeager and Valentine et al. In view of the common knowledge shown by these patents as to an adjusting structure for a mechanism of this sort, it is considered that the examiner's position is sound and that it would not amount to invention to provide the mechanism of the count referred to with an old and well known adjusting mechanism for this purpose."

Two principal questions are presented by appellant's reasons of appeal.

1. Did the board err in holding that the involved claims are not patentably distinct from count 5 of the interference?

2. Even though no invention is involved over the invention embraced in count 5, did the board err in holding the claims unpatentable because they differ from count 5 only in the latching means of the type shown by the references?

With respect to the first question above stated, appellant does not contend that the references do not disclose latching means similar to the latching means set forth in the claims, but he does contend that the references relate to a nonanalogous art, and that it required the exercise of the inventive faculty to employ such means in appellant's structure.

The references disclose latch and keeper means for maintaining the desired tension of a flexible cable or rope. Appellant discloses similar means for maintaining a spring at the desired degree of tension.

It seems to us that this simple method of maintaining tension of a flexible element should not be held to create a patentable distinction between the claims before us and count 5 of the interference. While it may be true that the art of constructing clothesline reels and that of providing mechanisms to be attached to drawing boards are, broadly speaking, far apart, the fact is that the desirability of maintaining the tension of a spring or other flexible element, which is the element here considered, is common to many mechanical devices. The device of a detent and keeper in appellant's structure performs the same function as does the similar device in the references.

We are therefore of the opinion that the use of such device in appellant's combination did not require the exercise of the inventive faculty and that there is no patentable distinction between the claims before us and said count 5 of the interference.

The next question to be considered is whether the claims before us are patentable in this application over the issue of the interference, there being no patentable distinction between the claims before us and count 5 of the interference.

It is obvious that if appellant should lose the interference as to count 5 the invention here involved would not be patentable to appellant, but his opponent in the interference would receive a patent therefor according to the terms of the count. In that case, the claims here involved would clearly not be allowable to appellant. If appellant should win the interference as to count 5, and if the claims before us had been made a part of the application in interference and supported by its disclosure, they would be allowable in that application.

In such case action by the Patent Office upon the claims involved in this appeal would undoubtedly have been postponed to await the outcome of the interference, as appellant here requested, but his request was denied.

However, we find no reason of appeal alleging error in the denial of such request, and therefore such denial may not be considered by us.

We might be content with affirming the decision appealed from without further discussion, but in view of certain contentions made by appellant we will proceed to consider the situation as if appellant was the winning party in the interference.

In his reply brief appellant asserts that since this appeal was taken the interference, so far as count 5 is concerned, has been decided in his favor by the Examiner of Interferences, and he appends to his brief a copy of the decision.

The record in that interference is not a part of the record in the case at bar, other than the fact that such an interference was instituted and count 5 was an issue therein.

Under the statute our jurisdiction is limited in cases of this character to a review of "the evidence produced before the commissioner," and our revision must be "confined to the points set forth in the reasons of appeal." Sec. 4914, R.S.,U.S.C., title 35, sec. 62, 35 U.S.C.A. § 62.

Obviously we may not, in deciding this case, consider facts affecting its merits occurring after appellant's appeal was taken.

 Furthermore, appellant does not, in his brief, contend that the decision of the Examiner of Interferences in the interference proceeding has become final. However, if it were final, and if we were at liberty to consider it, nevertheless we would be compelled to affirm the decision of the Board of Appeals herein.

Had appellant's broad claim 8 been retained in his instant application, he undoubtedly would, if he won the interference, be entitled to the allowance of the claims before us, but he is not entitled to a patent upon claim 8 in his copending application and the allowance of claims for the same invention in his instant application. In other words, he is not entitled to two patents for the same invention.

Upon this point our decision in the case of In re Seebach, 88 F.2d 722, 724, 24 C. C.P.A., Patents, 1101, is controlling. There, as here, certain claims were involved in a divisional application which differed only from the claims in a parent application in elements which were disclosed in the cited prior art. Certain claims of the parent application were in interference. The claims of the divisional application were rejected as not being patentably distinct from claims which became counts of the interference. We affirmed this ground of rejection, and agreed with the Board of Appeals that, even if the appellant in that case won the interference, the claims in his divisional application should nevertheless be rejected.

In that decision we quoted from the decision of the Board of Appeals as follows: "* * * It is not regarded as being material whether applicant is finally the successful or the unsuccessful party in the interference proceedings. In either case the situation as to patentability over the issue would be regarded as the same. * * *"

Following this quotation we stated: "We agree with the view of the Board upon this point, for in order to entitle appellant to allowance of the claims in his divisional application, it must appear that they embrace a different invention from that embraced in the claims of the parent application; or, in other words, they must be patentably distinct therefrom."

The only distinction in principle in the case last cited and the case at bar is that in the cited case division of the parent application was required, while here appellant's instant application was voluntary, but this distinction can be of no aid to appellant here.

In affirming the decision appealed from, it is of course understood that it is based wholly upon the record before us. If appellant should finally win the interference in which his copending application is involved, and should then cancel the claim corresponding to count 5 and be permitted to retransfer it to his instant application, a different question would arise, and nothing in this opinion should be construed as holding that the claims now before us would not then be allowable.

For the reasons given herein, the decision of the Board of Appeals is affirmed.

Affirmed.