33 C.C.P.A.(Patents)

### In re THOMPSON et al.
### Patent Appeal No. 5126.

Court of Customs and Patent Appeals.
March 6, 1946.

Owen & Owen, of Toledo, Ohio (Scott H. Lilly, of Toledo, Ohio, of counsel), for appellants.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel) for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

JACKSON, Associate Judge.

The issue presented by this appeal, the denial by the tribunals of the United States Patent Office of claims 2 and 4 of an application for a "Corrosion-Resistant Metallic Article and Method of Making the Same," was here previously in In re Thompson et al., 143 F.2d 357, 31 C.C.P.A., Patents, 1121.

There, all of the claims were allowed except 2 and 4, which were rejected as not being drawn in accordance with the Markush doctrine. We reversed the decision of the Board of Appeals and remanded the case for the sole purpose of having the reasons for the rejection of those claims more clearly explained.

In the instant case the Board of Appeals affirmed the decision of the Primary Examiner again rejecting the claims as not being proper Markush claims.

Allowed claim 1 and the involved claims read as follows:

"1. A process which comprises applying to an industrial metallic surface a film of an acidulous aqueous solution the chief compounds in the solution as applied containing the PO₄ radical, hexavalent chromium and a metal having a valence of at least two and acting as a cation, said film containing sufficient chemicals to form a corrosion-resistant paint-holding coat when dried, and drying the film on the metallic surface.

"2. A process which comprises applying to an industrial metallic surface a film of an acidulous aqueous solution the chief compounds in the solution as applied containing the PO₄ radical, hexavalent chromium and a metal of the group consisting of zinc, manganese, trivalent chromium, aluminum, magnesium, cadmium, calcium and nickel, said film containing sufficient chemicals to form a corrosion-resistant paint-holding coat when dried, and drying the film on the metallic surface."

"4. A process which comprises applying to an industrial metallic surface a solution containing as its chief ingredients when applied phosphoric acid, chromic acid and a salt of a metal of the group consisting of zinc, manganese, trivalent chromium, aluminum, magnesium, cadmium, calcium and nickel, said film containing sufficient chemicals to form a corrosion-resistant paint-holding coat when dried, and drying the film on the metallic surface."

The examiner stated that the only ground upon which claims 2 and 4 could be allowed would have to be that all of the members of the group belong to a known class of materials with such closely related chemical properties that the discovery of a certain characteristic in one would suggest its presence in the others. He stated that the exact chemical reaction by reason of which any of those elements would increase the corrosion-resistance character of the coating was not known. The examiner pointed out that all those elements belong to the general class of metals, possessing the general characteristics of "metallic luster, good heat and electrical conductivity etc." He stated those properties had no function in the process of the claims, and the physical and chemical properties in the general class of metals varied so widely that the discovery that one is operable in appellants' process would not suggest that any other would function similarly.

Appellants contended before the examiner that the metals recited in the involved claims must have a valence of at least two and form phosphates or chromates, and that that was a sufficient basis for placing them in a Markush grouping. The examiner rejected that contention for the reason that appellants did not show, and it was not clear to him, why the discovery of one metal having those characteristics useful in appellants' process would suggest that every other metal having a valence of at least two and forming phosphates or chromates could accomplish the same result. He noted that all metals except the alkali group have a valence of more than one and that practically all metals have the capacity to form phosphates or chromates. He finally held that it was his studied opinion that in view of the great physical and chemical differences between the metals included in the grouping that appellants' contention was entirely untenable. The examiner summarized his understanding of Markush groupings as follows: * * * (1) only substances which have been recognized to have such a community of chemical or physical prop-

erties that the discovery of the desired property in one would suggest its existence in the others, may be grouped in a Markush group, (2) the fact that these similarities have been recognized may be established by means of scientific texts in which the substances have been classified in groups because of the similarity in their properties or by means of trade publications, patents, etc. which show that the substances have become recognized as equivalents for their intended purpose. * * * "

The Board of Appeals agreed with the examiner's reasons, and in addition thereto suggested that the allowance of claim 1 would preclude the allowance of the rejected claims. The board held that possibly the group of metals in the rejected claims might have been allowable as being within the scope of the case of Ex parte Markush, 1925 C.D. 126, wherein there was no requirement for the recognition of the group as such, and the test seemed to have been principally that the applicant discovered the particular elements equivalent in his combination. In that case it seems that the only limitation was an avoidance in the grouping of things so dissimilar as to support separate patents.

The board then pointed out that the practice approved in the Markush case was narrowed in the case of Ex parte Palmer et al., 1930 C.D. 3, 7 USPQ 11, in that the Markush grouping must be found to come within the scope of a previously recognized classification group. In that case it was sought to couple neutral salts and cane sugar in one group as relustering agents for cellulose acetate filaments. The commissioner held that if separate claims were presented in that application, one for neutral salts and the other for cane sugar, division would have to have been ordered. He stated that those substances were present in no known or recognized genus except that both might be described as relustering agents in an artificial genus, but that the record presented nothing to show that if neutral salts had been discovered to possess the property of relustering it would suggest the same use for cane sugar.

The board observed that the application of the rule laid down in the Palmer et al. case had possibly resulted in some differences of opinion in the Patent Office, in that some decisions tended to follow the board original Markush principle and others had endeavored to compel the placing of alleged Markush groups under some one of a previously recognized group. The board then held that the grouping involved here does not square with the requirements of the Palmer et al. case, for the reason that the group is not found previously recognized as such and it is not apparent that the properties of one member would suggest the properties of another as a probable equivalent to one skilled in the art.

The board then discussed the case of Ex parte Burke, 1934 C.D. 5, 21 USPQ 399, for the purpose of pointing out a further limitation with respect to the Markush doctrine. That limitation prohibited the allowance of sub-generic claims of lesser scope under a more comprehensive grouping of all of them. The board held that claims 2 and 4 seem to conflict with the rule laid down there for the reason that the allowed claims applied to all polyvalent metals as a generic group of about 60, while the involved claims include only 8 as a sub-generic group.

Appellants contended below as they do here that the involved claims are allowable, particularly under the decision in the case of Ex parte Dahlen, 1934 C.D. 9, 21 USPQ 397. The board admitted that part of the language in that case, standing alone, might warrant allowance of claims 2 and 4, but pointed out that a reading of the entire decision would not be persuasive of allowance.

It is clear that in claim 1 appellants include all of the polyvalent metals, and if they all operate in their process appellants are fully protected. There is nothing in the record, as pointed out by the tribunals below, wherein appellants show or suggest that the metals of the groups in claims 2 and 4 differ in any respect from the other polyvalent metals, and therefore those metals cannot properly be combined in a Markush grouping under any of the cases with the possible exception of the Dahlen case, upon which appellants chiefly rely, or under the broad doctrine, subsequently limited, of the Markush case. The decision in the latter case was clarified in the Palmer et al. case by the same First Assistant Commissioner. He held there that the doctrine in the Markush case was not intended to include all substances which appellant claimed would answer his purpose, regardless of whether they could properly be included as species of a known genus or sub-genus. He stated that the Markush doctrine was intended to apply only in a case where the applicant endeavored to avoid a claim so broad as to be unpatentable, citing Mathewson v. Campbell, 78 F. 910, and subsequent

decisions, and to avoid securing a number of patents any of which might be held invalid in view of an earlier issued patent. In our opinion the decision in the Palmer et al. case, as was held below, properly limits the broad scope of the decision in the Markush case, and therefore the claims here involved are not allowable under the Palmer et al. decision.

It appears to us that the decision in the Dahlen case should not be approved by this court in the manner contended for by appellants. Their contention in effect must be that having been allowed claim 1 covering about 60 metals they are entitled to group arbitrarily any number thereof and be allowed a further claim on the basis of that grouping even though they have not shown that the group of metals has any property in common by which it is distinguished from other members of the larger group. While the board pointed out that some of the language of that case standing alone might provide a basis for appellants' contention, it held that the case stands for the principle that such a claim is justifiable only on the theory that the grouped substances have common properties not shared by the larger group or genus.

We are of opinion that the Dahlen case affords no basis for the allowance of claims 2 and 4 in view of the facts herein. Even assuming that those claims could be allowed under the doctrine of that case, appellants have not brought themselves within its scope for the reason that there is nothing in the record to indicate that the genus of polyvalent metals is of vast extent or that there are substances therein of rare occurrences and not easily obtainable for experimentation.

The board held a Markush type claim which is wholly within the scope of an allowed generic claim to be properly rejectable. In the case of Mathewson v. Campbell, supra, the principle was laid down that an applicant for a patent should not claim a genus unless he is convinced that all of its species will answer his purpose, and further that an applicant may not properly claim a genus as a result of experiments with only a few of its species. This would seem to be based on the reasoning that the applicant positively represents to the public that the entire genus operates, but nevertheless endeavors to secure allowance for a claim of lesser scope. Such diverse representations are surely built upon diverse hypotheses. We have no doubt the allowance of both types of those claims would violate the principle of Mathewson v. Campbell.

While it is true that certain language of the Dahlen case might be construed as supporting appellants' contention that they should be allowed both a generic claim and one of more limited Markush type, such a holding appears to be opposed to the general uniform rule announced in the other cases. We are of opinion that that contention should not be approved by us in this case.

While the tribunals of the Patent Office did not reject the involved claims for the reason that claim 1 might be construed, as pointed out in the brief of the Solicitor, as a Markush claim, it is interesting to observe that claim 1 calls for "a metal having a valence of at least two and acting as a cation." The inclusion of the phrase "acting as a cation" excludes hexavalent chromium, which as its name implies has a valence of six. Therefore that claim would seem to include an artificial grouping, and is no different than if all of the polyvalent metals excepting hexavalent chromium were set out. This might well be interpreted as a Markush claim. It certainly meets the definition in the case of Ex parte Clarke et al., 1931 C.D. 6, 11 USPQ 52, that a Markush claim is "a generic term limited by explanatory terms." More than one Markush type of claim may not be allowed within the same genus. Ex parte Burke, supra.

For the reasons above stated, the decision of the Board of Appeals is affirmed.

Affirmed.