38 C.C.P.A.(Patents)

## In re GREIDER et al.

**Patent Appeals No. 5746.**

United States Court of Customs and
Patent Appeals.

Feb. 6, 1951.

O'Connell, J., dissented in part.

———◆———

Kenyon & Kenyon, New York City (Lee B. Kemon, Washington, D. C., and Richard K. Parsell, New York City, of counsel), for appellants.

E. L. Reynolds, Washington, D. C. (J. Schimmel, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

JACKSON, Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming that of the Primary Examiner rejecting, as unpatentable, claims 1–13, inclusive, and 22–24, inclusive, of a patent application, serial No. 570,478, filed December 29, 1944. No claims were allowed.

All of the claims were rejected by the Primary Examiner as unpatentable over a patent to Kennedy, No. 1,820,538, dated August 25, 1931, upon an application filed June 2, 1928, in view of a British patent, No. 440,409, dated December 30, 1935.

Claims 3, 5, and 10 are of the Markush type. They were further rejected by the examiner on the authority of In re Thompson, 154 F.2d 189, 33 C.C.P.A., Patents, 942, true generic claims, such as claim 1, appearing in the application.

An additional rejection was made of claims 23 and 24 as being directed to a non-enumerated species, and therefore, they are not before us on their merits.

Claim 1, being the broadest of the involved claims, is considered illustrative of the involved subject matter, and reads as follows: "1. As an article of manufacture a flexible coherent bibulous felted-fiber sheet-like body, said fibers comprising asbestos fibers which are interbonded *in situ* by the interaction of said asbestos fibers *in situ* as disposed in felted relation in said sheet-like body with a water-soluble inorganic phosphate."

The present appeal is a companion to the case of In re Harold W. Greider and Marion F. Smith, 186 F.2d 718, 38 C.C.P.A., Patents, ——.

In that appeal all of the claims were rejected as unpatentable over the same patent to Kennedy as is cited here; a Markush type claim was rejected under the doctrine of the Thompson case, supra, and two claims were rejected as not readable on the elected species, there being no allowable generic claim present.

It should be observed that the only difference between the rejection of claims on the prior art in the companion case and the instant appeal is the addition to the latter of the British reference.

Both the former case and the present case relate to "Asbestos Sheet Material and Method of Manufacture." The product of the methods in both cases appears to be the same. The method in the instant appeal differs from that in the former case merely in the binding material. Such material in the former case is a water-soluble inorganic compound which produces a sulphate anion in a water solution, while in the instant case the binder is a water-soluble inorganic phosphate.

In the records of both cases there are affidavits for the purpose of proving that the processes of the prior art cannot produce the asbestos sheet material of the applications.

In both cases the board agreed with the contention of counsel for appellants that there is ample showing in the records that the paper produced by them is not disclosed in the references. The board, however, stated that none of the claims in either application define the paper contemplated by appellants. It stated in the former case, as it did here, that in view of the art presented and in the absence of further more pertinent art, not more than 4 claims (1 generic and 3 species) directed to the article disclosed in the application, with corresponding process claims, would be recommended for allowance.

Counsel for appellants here, as in the former appeal, contend that the recommendation of the board would not provide sufficient protection if the claims as recommended were made. Those claims, as stated by the board, "should be restricted to a flexible bibulous *paper consisting* essentially of felted asbestos fibers bonded together at their points of contact solely with the product of the action thereon of a solution of a water soluble phosphate applied to the prefelted asbestos."

Our decision in the companion appeal contains a rather complete description of the Kennedy patent and that description is by reference made a part of the present decision.

If the Kennedy patent were the only reference in the instant case our decision would follow that of the former appeal. Similarly, if, in our opinion, the Kennedy patent in view of the British reference is to be held insufficient to deny patentability to the involved claims, the decision of the board would likewise be reversed in that respect.

The British patent relates to a process for the improvement of products having a base of asbestos or other magnesium silicates which have been treated with alkaline silicates. It is said that the product of such process enhances the fireproofing, heat-insulating and other desirable qualities of such articles. The improvement is particularly directed to fire resistant and heat-insulating properties. A coating which comprises an alkaline or alkaline earth salt of finely divided filler and cobalt or lead linoleate is applied to the base articles of asbestos and magnesium silicate. It is stated in the patent that, among other things, the earth salts may comprise trisodium phosphate, ammonium magnesium phosphate, or mixtures thereof. The filler is said to comprise pulverized carbon, such as graphite, aluminum powder, kieselguhr or infusorial earth. The cobalt or lead linoleate has the function of binding together the materials of which the base product is formed and is said to be an effective fire resistant. The coating is applied to the asbestos material after the fibers thereof have been agglomerated in conventional manner into the form of plates, bands, sheets, or pieces, depending upon the desired shape or size of the same. It is said that in order to provide the final product with great rigidity, the agglomerated shapes may remain in a cold aqueous solution of any one of several hardening materials, among which disodium phosphate is mentioned. The hardening material, after drying, forms crystals that strongly adhere to the fibers thereby increasing the rigidity of the finished article. The patent also provides for another and final coating to the product, such as oil varnish treated with ammonia and comprising mica.

It is stated in the decision of the board that the use of the trisodium phosphate mentioned in the British patent, as a hardening agent, corresponds to the process described in the involved application and that trisodium phosphate is apparently the

same salt which is described by appellants as sodium phosphate (tribasic).

With respect to the affidavits in the record intended to demonstrate that sheets prepared by a mixture of asbestos fibers and phosphoric acid in accordance with the process of the patent are fragile and brittle, the board was of opinion that if the process of the patent cannot produce an article such as is contemplated by appellants "it is apparent that the critical differences are not embodied in the claims on appeal."

We do not think that the British patent discloses anything but a process for the production of an exremely hard, rigid, brittle, impregnated, and coated body. Clearly, the British process does not produce nor suggest the production of the flexible asbestos paper such as is defined in the rejected claims. According to the lexicographers, the expression "agglomerate" means to gather together in a mass, and, because of that meaning, it appears to us that there is nothing in the British patent upon which anything, other than massed material, has been subjected to the process hereinbefore described. A coating of trisodium phosphate, it appears to us from the disclosure of the British patent, would glaze the article, and, as contended by counsel for appellants, be dominated by the silicate and the filler.

In the affidavits herein, experiments are described in which the British process was used. It is shown in those experiments that when agglomerated asbestos fibers are formed into molds, the shaped forms are soft and spongy, but when treated in accordance with the British process the final product is extremely hard, brittle, and rigid. The resultant article seems to be exactly in accord with the purpose of the process of the British patent "giving the final product a comparatively great rigidity." Tests were described in an affidavit wherein the process was applied to a felted-fiber asbestos sheet paper as contradistinguished from an agglomerated fiber mass. When tested, the product was found to be stiff, brittle, and wholly unlike the strong, flexible, and pliable asbestos paper of appellants.

We are of opinion that the references, taken together or considered separately, neither disclose nor teach the discovery of appellants and, therefore, we hold that the rejection of the involved claims in view of the prior art was improper.

With respect to the rejection of claims 3, 5, and 10 as being of the Markush type, that ground of rejection should be affirmed. In re Langsner, 138 F.2d 512, 31 C.C.P.A., Patents, 785. Because, however, the decision of the board is reversed with respect to the rejection on the prior art and the case will again be within the jurisdiction of the Patent Office for further action, it seems reasonable to us, as it did in the companion appeal and for the reasons therein given, that the rejection of those claims as being of the Markush type should be withdrawn.

For the reasons stated herein, the decision of the Board of Appeals in rejecting the involved claims as unpatentable over the prior art, is reversed, and with respect to claims 3, 5, and 10 as being of the Markush type, its decision must be affirmed.

Modified.

O'CONNELL, Judge (dissenting in part).

The rule in Langsner, supra, is not pertinent here because in that case the situation was based upon a subsequent change in essential facts and not a subsequent change in law effected by a change in the rules of practice in the Patent Office. When, as here, the new rule is not inconsistent with the statutes, it has force and operation of law. In re Terres et al., 150 F.2d 711, 32 C.C.P.A., Patents, 965.

By a short cut to justice, the court should relieve appellants of the necessity of resorting to all the technical apparatus of procedure, with which litigants are familiar, in order to correct a situation which the court has learned from its own records that the foundation of the decision of the Board of Appeals has been reversed. Reed v. Allen, 286 U.S. 191, 207, 52 S.Ct. 532, 76 L.Ed. 1054.