REED ET AL. *v.* ALLEN.

No. 600.   Argued April 18, 1932.—Decided May 16, 1932.

192

See also, 17 F. (2d) 666.

*Messrs. J. Wilmer Latimer, Walter C. Clephane,* and *Gilbert L. Hall* submitted for petitioners.

*Mr. George C. Gertman,* with whom *Mr. Alvin L. New-myer* was on the brief, for respondent.

Mr. Justice Sutherland delivered the opinion of the Court.

In 1922 Thomas Walker filed a bill of interpleader in the Supreme Court of the District of Columbia, naming as defendants these petitioners (or their predecessors) and this respondent, for the purpose of having determined, as between them, the ownership of money then in the hands of Walker, which he had collected as rentals from certain real property. The rights of the rival claimants to the funds depended upon the construction of the will of Silas Holmes. The court construed the will in favor of petitioners and against respondent, and thereupon entered a decree awarding the money to the former.

Thereafter, and pending an appeal from that decree to the District Court of Appeals taken without a supersedeas, petitioners brought an action in ejectment against respondent to recover the real estate from which the rents had been derived. The title which they asserted in that action rested upon the same provisions of the Holmes will as were involved in the interpleader suit; and petitioners pleaded and relied upon the decree in that suit as having conclusively established the construction of these provisions in their favor. See *Lessee of Parrish* v. *Ferris,* 2 Black 606, 608. Judgment was rendered for petitioners, and possession of the real property delivered to them under a writ issued to carry the judgment into effect. From this judgment respondent did not appeal. Thereafter, the District Court of Appeals reversed the decree of the District Supreme Court in the interpleader suit and remanded the cause for further proceedings not inconsistent with its opinion. 57 App. D. C. 78; 17 F. (2d) 666. Following the mandate issued thereon, the trial court vacated its decree and directed payment of the rental money to the respondent.

Some months later a second ejectment action was brought, this time by respondent against petitioners for the repossession of the same real property. By way of estoppel petitioners pleaded the final judgment in the first ejectment action, upon which the trial court gave judgment in their favor. Upon appeal to the District Court of Appeals the latter judgment was reversed. 54 F. (2d) 713.

The appellate court thought that the first ejectment action was merely in aid of the decree in the equity suit, and that when that decree was reversed the judgment in the first ejectment action fell with it. With that view we cannot agree. The interpleader suit and the decree made therein involved only the disposition of the funds collected and held by Walker. The decree adjudged, and could adjudge, nothing in respect of the real estate. It is perfectly plain, therefore, that petitioners could not have been put into possession of the real property by force of that decree; and it is equally plain that respondent could not have been put into such possession in virtue of the reversal. So far as that property is concerned, the rule in respect of restitution upon reversal of a judgment is irrelevant. The first action in ejectment was not brought to effectuate anything adjudicated by the decree, or, in any sense, in aid thereof. It was brought to obtain an adjudication of a claim in respect of a different subject matter. The facts and the law upon which the right to the money and the title to the realty depended may have been the same; but they were asserted in different causes of action. The decree in the interpleader suit no more vested title to, or compelled delivery of possession of, the realty than the judgment in the ejectment action required payment to one party or the other of the money surrendered by the stakeholder. Compare *United States* v. *Moser,* 266 U. S. 236, 241.

The judgment in the ejectment action was final and not open to assault collaterally, but subject to impeachment only through some form of direct attack. The appellate court was limited to a review of the interpleader decree; and it is hardly necessary to say that jurisdiction to review one judgment gives an appellate court no power to reverse or modify another and independent judgment. If respondent, in addition to appealing from the decree, had appealed from the judgment, the appellate court, having both cases before it, might have afforded a remedy. *Butler* v. *Eaton,* 141 U. S. 240. But this course respondent neglected to follow. What the appellate court would or could have done if an appeal from the judgment had been taken and had been heard in advance of the appeal from the decree is idle speculation, since the probability that such a contingency would have arisen is so remote as to put it beyond the range of reasonable supposition. In the first place, the appeal from the decree had been taken and was pending when the judgment in the law action was rendered. It well may be assumed that the natural and usual course of hearing cases in the order of their filing would have been followed. But, in addition to that, both appeals necessarily would have been pending before the appeal from the judgment possibly could have been heard, and it rationally may not be doubted that upon application and a showing of their relationship the court would have heard them together, or at least not have disposed of the appeal from the judgment without considering its connection with the other appeal from the decree.

The predicament in which respondent finds himself is of his own making, the result of an utter failure to follow the course which the decision of this court in *Butler* v. *Eaton, supra,* had plainly pointed out. Having so failed, we can not be expected, for his sole relief, to upset the general and well established doctrine of *res judicata,* conceived in the light of the maxim that the interest of the

state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of a precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship. *United States* v. *Throckmorton,* 98 U. S. 61, 65, 68–69.

The rule has been settled for this court that where a judgment in one case has successfully been made the basis for a judgment in a second case, the second judgment will stand as *res judicata,* although the first judgment be subsequently reversed. *Deposit Bank* v. *Frankfort,* 191 U. S. 499. There a federal court had upheld a contract of exemption from taxation, basing its decision upon the judgment of a state court of first instance. Subsequently that judgment was reversed. On error to the state court of appeals, it was held that under the doctrine of *res judicata* the judgment of the federal court estopped each party from again litigating the question. Speaking for the court, Mr. Justice Day said (pp. 510–511):

"It is urged that the state judgment upon which the Federal decree of 1898 is based was afterward reversed by the highest court of Kentucky, and, therefore, the foundation of the decree has been removed and the decree itself must fall. But is this argument sound? When a plea of *res judicata* is interposed based upon a former judgment between the parties, the question is not what were the reasons upon which the judgment proceeded, but what was the judgment itself, was it within the jurisdiction of the court, between the same parties, and is it still in force and effect? The doctrine of estoppel by judgment is founded upon the proposition that all controversies and contentions involved are set at rest by a judgment or decree lawfully rendered which in its terms em-

bodied a settlement of the rights of the parties. It would undermine the foundation of the principle upon which it is based if the court might inquire into and revise the reasons which led the court to make the judgment. . . . We are unable to find reason or authority supporting the proposition that because a judgment may have been given for wrong reasons or has been subsequently reversed, that it is any the less effective as an estoppel between the parties while in force."

" It is to be remembered," the court added (p. 512), " that we are not dealing with the right of the parties to get relief from the original judgment by bill of review or other process in the Federal court in which it was rendered. There the court may reconsider and set aside or modify its judgment upon seasonable application. In every other forum the reasons for passing the decree are wholly immaterial and the subsequent reversal of the judgment upon which it is predicated can have no other effect than to authorize the party aggrieved to move in some proper proceeding, in the court of its rendition, to modify it or set it aside. It cannot be attacked collaterally, and in every other court must be given full force and effect, irrespective of the reasons upon which it is based."

*Parkhurst* v. *Berdell,* 110 N. Y. 386, 392; 18 N. E. 123, is cited with approval. In that case the Court of Appeals of New York rejected the contention that the reversal of a judgment which had been given effect as an estoppel in a second action, would avoid the force of the second judgment.

" If the judgment-roll was competent evidence when received," the state court said, " its reception was not rendered erroneous by the subsequent reversal of the judgment. Notwithstanding its reversal, it continued in this action to have the same effect to which it was entitled when received in evidence. The only relief a party against whom a judgment which has been subsequently

reversed has thus been received in evidence can have is to move on that fact in the court of original jurisdiction for a new trial, and then the court can, in the exercise of its discretion, grant or refuse a new trial, as justice may require."

See also *Gould* v. *Sternberg*, 128 Ill. 510, 515-516; 21 N. E. 628.

These decisions constitute applications of the general and well settled rule that a judgment, not set aside on appeal or otherwise, is equally effective as an estoppel upon the points decided, whether the decision be right or wrong. *Cornett* v. *Williams*, 20 Wall. 226, 249-250; *Wilson's Executor* v. *Deen*, 121 U. S. 525, 534; *Chicago, R. I. & P. Ry.* v. *Schendel*, 270 U. S. 611, 617. The indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert.

*Judgment reversed.*

MR. JUSTICE CARDOZO, dissenting.

The real estate belonging to Silas Holmes was devised by his will, in the event of the death of his daughter "without issue," to his nephew and to his brothers and sisters then living, in equal shares.

Upon the death of the daughter a controversy arose between her grandson, Lorenzo Allen, who was the sole surviving descendant of the testator, and the nephew and brothers and sisters.

An interpleader suit followed to determine the distribution of rents deposited as a fund in the Registry of the Court.

In that suit the Supreme Court of the District adjudged on July 24, 1925, that the true interpretation of the will of Silas Holmes was that upon the death of his daughter

"without leaving child her surviving," the real estate described in the bill of complaint was devised to the nephew and the brothers and sisters, and that the rents accruing since her death should be divided in the same way.

On appeal to the Court of Appeals that decree was reversed (January 3, 1927) with the result that on May 27, 1927, a final decree was entered vacating the decree of July 24, 1925, adjudging that the true interpretation of the will of Silas Holmes was that upon the death of said decedent's daughter, Virginia Allen, leaving issue, i. e., a grandson, but no child her surviving, "the said will became inoperative as to the real estate therein described and the said testator therefore died intestate as to the said real estate," and further adjudging that the balance of the fund on deposit in the registry be paid to Lorenzo Allen, the sole heir at law.

In the meantime, the nephew and the brothers and sisters, who for convenience will be spoken of as the collateral relatives, brought an action of ejectment against the heir to recover the possession of the real estate adjudged to be theirs by the decree of July, 1925. In that action they relied solely upon the will and the decree establishing their ownership thereunder. The defendant, admitting the decree, set up the plea that an appeal had been taken from it and was still undetermined. A demurrer to the plea was sustained, and the plaintiffs recovered a judgment (August 21, 1926), under which possession was delivered to them. From that judgment the defendant did not prosecute an appeal.

In December, 1927, upon the entry of the final decree in the equity court the respondent, Lorenzo Allen (the defendant in the first action of ejectment) brought this action of ejectment against the collateral relatives to recover the possession of the real estate from which they

had ousted him. The defendants pleaded in bar the judgment previously rendered in their favor in the first action of ejectment. The plaintiff (the respondent here) filed a replication showing the relation between that judgment and the equity decree and the reversal of the decree after possession had been delivered. The Supreme Court of the District sustained a demurrer to the replication and ordered judgment for the defendants. The Court of Appeals reversed and gave the possession to the plaintiff. The case is here upon certiorari.

The respondent, in order to prevail, must uphold three propositions. He must show: (1) that he is entitled to restitution of any property interests lost to him by force of the erroneous decree; (2) that in losing possession under the judgment of ejectment he suffered a loss that was caused by the decree; (3) that the present action of ejectment is, irrespective of its name, an action for restitution, and an appropriate remedy to put him back where he was at the time of the ouster.

1. As to proposition number 1, there is hardly room for controversy. The rule is abundantly settled both in this court and elsewhere that what has been lost to a litigant under the compulsion of a judgment shall be restored thereafter, in the event of a reversal, by the litigants opposed to him, the beneficiaries of the error. *Arkadelphia Co.* v. *St. Louis S. W. Ry. Co.,* 249 U. S. 134; *Northwestern Fuel Co.* v. *Brock,* 139 U. S. 216; *United States Bank* v. *Bank of Washington,* 6 Pet. 8, 17; *Haebler* v. *Myers,* 132 N. Y. 363; 30 N. E. 963. Two remedies exist, the one by summary motion addressed to the appellate court, the other by a plenary suit. The books show that it has long been the practice to embody in the mandate of reversal a direction that the plaintiff in error " be restored to all things which he hath lost by occasion of the said judgment." *Arkadelphia Co.* v. *St. Louis S. W. Ry. Co.,*

*supra; Haebler* v. *Myers, supra.* What this was might be ascertained through an order to show cause known as a *scire facias quare restitutionem habere non debet. Haebler* v. *Myers, supra.* Inquiry was then made whether anything had been taken " by colour of the judgment," (*Sympson* v. *Juxon,* Cro. Jac., 698), with an appropriate mandate for the return of anything discovered. On the other hand, the litigant who has prevailed on the appeal is not confined to a motion for summary relief. He may elect to maintain an action, or the court in its discretion may remit him to that remedy. *United States Bank* v. *Bank of Washington, supra; Haebler* v. *Myers, supra; Clark* v. *Pinney,* 6 Cowen 297. One form of remedy or the other, however, is granted as of right. The remedy in its essence like the one for money had and received is for the recovery of benefits that in good conscience may no longer be retained. " It is one of the equitable powers inherent in every court of justice, so long as it retains control of the subject matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *Arkadelphia Co.* v. *St. Louis S. W. Ry. Co., supra.* Indeed, the correction may extend to cases where the postulants for restitution are not even parties to the record. *Arkadelphia Co.* v. *St. Louis S. W. Ry. Co., supra,* p. 146; *Stevens* v. *Fitch,* 11 Metc. 248. The whole subject has heretofore been dealt with in a spirit of the largest liberality. The judicial process has been moulded with an anxious effort to put an end as speedily as may be to wrongs originating in judicial errors.

2. Our second inquiry must now be answered: Was the loss of possession under the judgment of ejectment a loss that was inflicted upon the respondent by force of the decree in equity adjudging, and adjudging erroneously, that the petitioners were the owners?

A question very similar was considered by the courts of New York in the early case of *Clark* v. *Pinney,* 6

Cowen 297 (cited by this court in *United States Bank* v. *Bank of Washington, supra*). The plaintiffs had given a note in satisfaction of an execution issued on a judgment, and thereafter a second judgment was recovered on the note. The first judgment having been reversed, they sued to recover the money paid upon the second. The decision was that the defendant had money in his hands that *ex aequo et bono* was owing to the plaintiffs, and that he should be compelled to pay it back. The court was not deterred from this conclusion by the intervention of a second judgment, unappealed from, between the first judgment and the payment. It looked to the events in their combined significance, and viewed the action for restitution as an instrument of justice. The entry of a second judgment, instead of being a circumstance fastening the rivets of injustice, was merely an additional reason why the rivets should be broken.

The problem now before us should be approached in a like spirit.

If the decree had contained a provision that the petitioners were entitled to a deed to be executed by a trustee, there can be no doubt that upon the reversal of the decree they could have been required to execute a deed back. If the trustee had refrained from executing a conveyance and had been compelled by a separate decree to fulfill what appeared to be his duty, only a narrow view of the remedial powers of equity would discover in the separate decree a decisive element of difference. The restitution that would have been decreed if the auxiliary proceeding had been one in equity, is equally available here where the auxiliary remedy was one at law, an action of ejectment for the recovery of possession. In every substantial sense, the judgment in ejectment was the consequence and supplement of the erroneous adjudication that the petitioners were the owners and entitled to the rents. The respondent made no claim to any right of possession except such right as was his by virtue of ownership under the will.

The petitioners made no claim on their side apart from the will and the decree adjudicating ownership in them. Looking into the record of the trial, as we are privileged to do, in order to ascertain the grounds upon which possession was awarded (*Oklahoma* v. *Texas,* 256 U. S. 70, 88; *National Foundry Co.* v. *Oconto Water Supply Co.,* 183 U. S. 216, 234; *Russell* v. *Place,* 94 U. S. 606, 608), we find that there was no opportunity for a consideration upon the merits of the respondent's claim of title, and that within the principle of *res judicata* there was nothing to be tried. Indeed, the respondent made no contention to the contrary, but merely urged in his plea that judgment be deferred till the appeal from the decree could be determined by the appellate court. The plea being overruled, judgment of ouster followed as an inevitable consequence. It was as inevitable, and as plainly the fruit of the earlier decree in equity, as it would have been if that decree had said upon its face that the respondent was under a duty to surrender possession to the petitioners if possession was demanded.

The argument for the petitioners is that the respondent in this predicament had one remedy, and one only, an appeal from the judgment giving effect to the decree, and that failing to prosecute that remedy, he became helpless altogether. I concede that an appeal was a remedy available to the respondent, but not that.it was his only one, or that the failure to pursue it brought down upon his head a penalty so dire. *Clark* v. *Pinney, supra.* Consider the situation in which he would have stood if the appeal had been taken. The judgment of ejectment was not erroneous when rendered. No other judgment could properly have been rendered if there was to be adherence to the principle of *res judicata.* The Court of Appeals would have been constrained to affirm it, whether they believed the earlier decision to be correct or erroneous,

if the accidents of the calendar had brought up the review of the judgment before there had been opportunity to pass upon the decree. *Parkhurst* v. *Berdell,* 110 N. Y. 386; 18 N. E. 123; *Deposit Bank* v. *Frankfort,* 191 U. S. 499, 512. Even if the appeal from the decree had been heard and decided first, the reversal of the second judgment would have followed, not for any error of the trial court, but in furtherance of substantial justice by the application of principles analogous to those that govern the allowance or denial of a writ of restitution. The subject was considered in *Butler* v. *Eaton,* 141 U. S. 240. The ruling there was that the court in such a situation, if it learns from its own records that the foundation judgment has been reversed, will set aside the second though the trial be free from error. By a short cut to justice it will relieve the litigant of the necessity of resorting to bills of review and motions for a new trial and all the technical apparatus familiar to students of procedure. Cf. *Ballard* v. *Searls,* 130 U. S. 50, 55; *Walz* v. *Agricultural Ins. Co.,* 282 Fed. 646. On the other hand, there are barriers to remedies so summary where the decree of reversal has been rendered in the courts of another jurisdiction. *Deposit Bank* v. *Frankfort, supra.* In such circumstances the reversal is no longer cognizable without proof, is no longer within the range of judicial notice. There are, besides, other complications resulting from the duty of a State to give effect and credit to the judgments of the federal courts and those of other States. *Deposit Bank* v. *Frankfort, supra.* The very fact, however, that the second judgment will be reversed where the reversal of the first judgment is known to the appellate court by force of judicial notice is in itself a potent token that the second judgment is understood to be the product of the first, and hence within the equity and reason of the writ of restitution. What was written in *Butler* v. *Eaton,*

*supra,* pp. 243, 244, can be applied with little variation here. " The judgment complained of," it was there written, " is based directly upon the judgment of the Supreme Judicial Court of Massachusetts, which we have just reversed. It is apparent from the inspection of the record that the whole foundation of the part of the judgment which is in favor of the defendant is, to our judicial knowledge, without any validity, force or effect, and ought never to have existed. Why, then, should not we reverse the judgment which we know of record has become erroneous, and save the parties the delay and expense of taking ulterior proceedings in the court below to effect the same object? " The respondent is in a worse plight than was the plaintiff in error in *Butler* v. *Eaton.* He has no remedy in the court of first instance, unless it be by an action of this nature, for the time to move for a new trial on the ground of newly discovered evidence expired with the term. *United States* v. *Mayer,* 235 U. S. 55; *Realty Acceptance Corp.* v. *Montgomery,* 284 U. S. 547. If he had appealed from the judgment in ejectment and the appeal had been heard and decided before the reversal of the decree, his position would be no better. Upon the reversal of the decree afterwards he would still, in the view of the petitioners, have been left without a remedy; there would even then have been no power in the court to undo the wrong that had been perpetrated under color of its mandate. I think we should hesitate long before committing our procedure to so sterile a conclusion.

For the purpose of the case before us, no significance is to be given to the provisions of the Code (Code of District of Columbia, § 1002) whereby " a final judgment rendered in an action of ejectment shall be conclusive as to the title thereby established as between the parties to the action and all persons claiming under them since the commencement of the action." The object of that statute

was to abrogate anomalies as to the effect of a judgment in ejectment that had grown up at common law when the remedy was held to be one affecting possession only, and not directed to the title. *Cincinnati* v. *White*, 6 Pet. 431, 443. The codifiers did not mean that a party who has recovered in ejectment shall be more immune from restitution than one in any other form of action. A different question would be here if the persons resisting restitution were not the immediate parties to the suit, but strangers acquiring an interest in the property in reliance on the judgment. As to strangers so situated the remedy of restitution has been excluded since ancient days. *Matthew Manning's Case*, 4 Coke 94; *United States Bank* v. *Bank of Washington, supra.*

3. The third branch of the inquiry need not detain us long. If I have been right in what has gone before, there can be little room for controversy as to the fitness of the remedy. An action for restitution has for its aim to give back to a suitor what a judgment has taken from him. What was taken from the respondent under the shelter of this reversed decree and because of its coercive power was the possession of a tract of land. The effect of a judgment in this action of ejectment will be to re-establish his possession and put him where he was before. The quality of the remedy is to be determined by the end to be achieved, and not by any label, whether restitution or ejectment.

A system of procedure is perverted from its proper function when it multiplies impediments to justice without the warrant of clear necessity. By the judgment about to be rendered, the respondent, caught in a mesh of procedural complexities, is told that there was only one way out of them, and this a way he failed to follow. Because of that omission he is to be left ensnared in the web, the processes of the law, so it is said, being impotent to set him

free. I think the paths to justice are not so few and narrow. A little of the liberality of method that has shaped the law of restitution in the past (*Clark* v. *Pinney, supra; Arkadelphia* v. *St. Louis S. W. Ry. Co., supra*) is still competent to find a way.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE join in this opinion.