Marvin P. SMITH, et al., Plaintiffs,

v.

WOODSTOCK, INC., et al., Defendants.

No. 81 C 1056.

United States District Court,
N. D. Illinois, E. D.

Sept. 1, 1981.

---

Joshua L. Rosen, Stephen M. Merrick, Fishman, Merrick, Perlman & Nagelberg, P. C., Chicago, Ill., for plaintiffs.

Bernard F. Doyle, Jr., Phelan & Doyle, Herbert I. Rothbart, Getzoff, Rothbart & Getzoff, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER *

SHADUR, District Judge.

Woodstock, Inc. ("Woodstock") has moved under Fed.R.Civ.P. ("Rule") 12(b)(6) to dismiss this action brought by Marvin P. and Janet Lee Smith ("Smiths") for failure to state a cause of action due to res judicata considerations. Because the matters on which Woodstock relies are not apparent on the face of Smiths' Complaint, a Rule 12(b)(6) motion is really inappropriate, 5 Wright and Miller, Federal Practice and Procedure: Civil § 1357 at 604–10. However the parties have briefed the motion in full agreement on the matters outside the Complaint to be considered by the Court, and the Court will therefore treat Woodstock's motion as the equivalent of one for summary judgment. *Moch v. East Baton Rouge Parish School Board,* 548 F.2d 594, 596 n.3 (5th Cir. 1977). For the reasons stated in this memorandum opinion and order Woodstock's motion is granted.

### Facts

Smiths charge Woodstock[1] with having misrepresented various matters relating to the establishment of a discretionary commodities futures trading account for Smiths' benefit. Smiths' investments aggregating $65,000 in the account ended up with a value of $4,000 on liquidation. Smiths assert claims for common law fraud, Commodities Exchange Act violations, churning, breach of contract and breach of

---

* After this opinion was already written this Court received the just-decided opinion of our Court of Appeals in *Harper Plastics, Inc. v. Amoco Chemicals Corp.,* 657 F.2d 939 (7th Cir. 1981). This opinion has been adapted to reflect *Harper Plastics,* though a redrafting from scratch might have shortened portions of the discussion.

1. Co-defendant Boe, who has not been served with process, is an Arizona resident who was a Woodstock account executive in its Phoenix office. According to the Complaint Boe acted as Woodstock's agent in the respects in which Woodstock allegedly injured Smiths.

fiduciary duties. All the claims other than the Commodities Exchange Act claims are brought under the Court's diversity jurisdiction and (inappropriately) pendent jurisdiction as well.

All the underlying facts alleged by Smiths were the subject of a prior action in the United States District Court for the Northern District of California (No. C–77–2384–CFP), brought by Smiths against Woodstock, Boe and Sidney Becker (Woodstock's President). In the California actions Smiths relied on the identical facts to assert nine counts of claimed securities law violations and three counts (breach of fiduciary duties, common law fraud and churning) labeled as pendent jurisdiction counts. It is critical to note that jurisdiction of the California District Court over the last three counts *could* have been asserted on diversity grounds, just as are the non-Commodities Exchange counts before this Court.[2]

Smiths' California action has had a checkered history, having involved an aborted appeal to the Court of Appeals for the Ninth Circuit (no Rule 54(b) determination having been made when summary judgment was granted in favor of Woodstock and Becker but not in favor of Boe). On May 15, 1981 the California District Court denied Smiths' motion to set aside and revise the summary judgment order and to file a Third Amended Complaint there.[3] Thus the summary judgment in favor of Woodstock against Smiths remains a final adjudication.

### Res Judicata

Late in its last term the United States Supreme Court again made plain—as this Court had always assumed—that the doctrine of res judicata applies in federal courts with full force. In *Federated Department Stores, Inc. v. Moitie*, —— U.S. ——, ——, 101 S.Ct. 2424, 2427, 69 L.Ed.2d 103 (1981) it repeated the standard articulation of the doctrine:

> There is little to be added to the doctrine of res judicata as developed in the case law of this Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Commissioner v. Sunnen*, 333 U.S. 591, 597, 68 S.Ct. 715, 719, 92 L.Ed. 898 (1948); *Cromwell v. County of Sac*, 94 U.S. 351, 352–353, 24 L.Ed. 195 (1877).

Also significantly for the present case, it specifically rejected the effort of the Court of Appeals for the Ninth Circuit to create an equitable "public policy" or "simple justice" exception to res judicata principles.

Accordingly the first question for this Court is whether the California District Court's summary judgment in favor of Woodstock and against Smiths was a judgment "on the merits." In that respect last week's decision in *Harper Plastics* makes the answer crystal clear: It was. As the Court put it in *Harper Plastics*, at 943:

> For the purposes of *res judicata*, the definition of a judgment on the merits is one which "is based on legal rights as distinguished from mere matters of practice, procedure, jurisdiction, or form." *Fairmont Aluminum Co. v. Comm'r*, 222 F.2d 622 (4th Cir.), *cert. denied*, 350 U.S. 838 [76 S.Ct. 76, 100 L.Ed. 748] (1955). Traditionally, a judgment is on the merits if it completely disposes of the underlying cause of action, *Cromwell v. County of Sac*, 94 U.S. 351 [24 L.Ed. 195] (1877), or

---

2. All parties are identical in the two actions except for the presence of Becker as an additional defendant in California. Becker, like Woodstock, is an Illinois resident and therefore would not destroy diversity in the suit by Smiths, California residents. As critical as this fact is for analytical purposes, Woodstock's memoranda place their principal focus elsewhere, while Smiths' memorandum totally ignores the problem it poses for them—a fatal one.

3. In 1977 Woodstock filed a declaratory judgment action against Smiths in the Circuit Court of Cook County, Illinois, essentially presenting the obverse side of the coin represented by Smiths' lawsuits in California and in this Court. Because that state court action is still pending it has no effect on the motion now under consideration here (there is no provision in the Rules corresponding to Illinois' Civil Practice Act § 48(1)(g), which mandates dismissal if "there is another action pending between the same parties for the same cause").

determines that the plaintiff has no cause of action, *Restatement of the Law of Judgments* § 49, comment a at 193 (1942). Its effect is that of an absolute bar to a subsequent action. *Weston Funding Corp. v. Lafayette Towers, Inc.*, 550 F.2d 710, 713 (2d Cir. 1977). A more modern view includes not only those judgments based on legal rights, but extends to dismissals on other than traditionally substantive grounds. *See* Fed.R.Civ.P. 41(b); Reporter's Note, *Restatement (Second) of Judgments* § 48, at 42–43. Indeed, the *Restatement (Second) of Judgments* dispenses with the "on the merits" terminology "because of its possibly misleading connotations." *Restatement (Second) of Judgments*, § 48 at 36 (Tent. Draft No. 1 1973).

That analysis, and the result it compels, serve the purposes that underlie the res judicata doctrine. Smiths had ample opportunity to assert in their California lawsuit *every* claim now urged in their present Complaint. Indeed Judge Orrick stated in denying Smiths' motion to add identical claims (May 15, 1981 Tr. 10):[4]

> Because even though it was not clear whether a private action under the Commodities Act was available at the time the plaintiffs filed their Second Amended Complaint, there's no question but that they could have brought that action in the same manner that other plaintiffs in similar positions have done when they've pleaded violations of both the Securities Act and the Commodities Act. . . .
>
> In this case it appears to me there was ample opportunity for the plaintiffs to have raised the legal claims that they

now seek to state; and they've offered no excuse for not doing so.

It is quite irrelevant that dismissal of the three common law claims by the California District Court was attributable to the fact that Smiths were there assertedly relying on *pendent* jurisdiction, so that the merits of those counts were not examined by the California courts. Instead the controlling fact for res judicata purposes is that the nine *federal jurisdiction* counts (the claimed securities law violations) *were* disposed of "on the merits" (a fact so clearly established by the principles stated earlier that it is contested nowhere in Smiths' memorandum). Such disposition bars all claims raised or that "could have been raised in that action." And there is no question that the common law claims "could have been raised" in the California District Court, grounded on *diversity* jurisdiction.[5]

Though the Court of Appeals in *Harper Plastics* did not follow the "on the merits" locution employed in *Federated*, its characterization of what plaintiff sought to do in *Harper Plastics* is equally applicable here at 945:

> As a corollary to the general rule, *res judicata* operates to bar litigation of matters that should have been raised in the prior proceeding. The prior judgment is conclusive "not only in respect of every matter which was actually offered and received to sustain the demand or to make out a defense, but also as to every ground of recovery or defense which might have been presented." *Mendez v. Bowie*, 118 F.2d 435, 440 (1st Cir.), *cert. denied*, 314 U.S. 639, 62 S.Ct. 76, 86 L.Ed.

---

4. It is not for this Court to rule on the propriety of granting or denying such leave to amend in California. That issue is about to be presented to the Court of Appeals there.

5. Because there is complete diversity between Smiths and the defendants in the California action, this Court need not deal with the conceptually more difficult question whether solely pendent claims are claims that "could have been raised" for res judicata purposes where the supporting federal causes of action have assertedly been disposed of for failure to state a claim. Compare *Harper Plastics*, at 945–946,

with *Daniels v. All Steel Equipment, Inc.*, 590 F.2d 111, 114 (5th Cir. 1979). In the present situation Smiths' alleged common law claims stand in no different position from Smiths' alleged commodities claims. Each "could have been raised" in the California action. *Each* is therefore barred by res judicata. Smiths' failure to assert the common law claims in a form the California court would have recognized it had jurisdiction over, and would therefore consider on the merits, is no different from Smiths' failure to raise the claim at all in the first action. Either such failure would be fatal under res judicata principles.

513 (1941). This application of the doctrine of *res judicata* operates to prevent the splitting of a single cause of action and the use of several grounds for recovery under the same action as the basis for separate suits. *Id.* An unsuccessful party may not, therefore, frustrate the doctrine of *res judicata* by cloaking the same cause of action in the language of a theory of recovery untried in the previous litigation.

*Lambert v. Conrad,* 536 F.2d 1183 (7th Cir. 1976). All of Smiths' theories of recovery, whether tried in the previous litigation, offered in the previous litigation or offered afresh in this action (and in the motion to amend in the California litigation) represent splits of a single cause of action. Res judicata prohibits that splitting process.

Only one question remains for discussion. Woodstock's counsel *did* state at the time Smiths' last motion was before the California District Court that "counsel isn't really losing any other possible claim he might have; he can raise them in the other two lawsuits his clients have" (May 15, 1981 Tr. 7). That poses the question whether estoppel or some equivalent notion should preclude the application of res judicata—which would certainly operate with full vigor but for Woodstock's counsel's statement. Two factors prevent any change in the result for that reason:

(1) Smiths' counsel specifically apprised Judge Orrick of the res judicata claim being asserted by Woodstock, thus urging the importance of preserving their claims by an amendment to the California complaint. As reflected by Judge Orrick's language quoted earlier in this opinion, his decision was *not* based on the continuing availability of the claim in this proceeding, but rather on Smiths' failure to show any justification for not having raised the claims earlier in the California action.

(2) *Federated* rejected the Court of Appeals' effort to raise equitable principles above the established doctrine of res judicata (101 S.Ct. at 2429):

But we do not see the grave injustice which would be done by the application of accepted principles of res judicata.

"Simple justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*" *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin v. Traveling Men's Association,* 283 U.S. 522, 525, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931). We have stressed that "the doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the court." *Hart Steel Co. v. Railroad Supply Co.,* 244 U.S. 294, 299, 37 S.Ct. 506, 507, 61 L.Ed. 1148 (1917). The language used by this Court half a century ago is even more compelling in view of today's crowded dockets:

"The predicament in which respondent finds himself is of his own making ... we cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata,* conceived in the light of the maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of precedent for so disregarding the salutary doctrine against prolonging strife would be greater than the bene-

fit which would result from relieving some case of individual hardship." *Reed v. Allen, supra,* 286 U.S. [191], at 198–199, 52 S.Ct. [532], at 533 [76 L.Ed. 1054].

*Federated* thus negates the overriding of res judicata—a doctrine of strong public interest—by the other "public policy" embodied in the estoppel resulting from private conduct.[6]

### Conclusion

This action is dismissed as to defendant Woodstock, Inc. because it is barred by res judicata. On or before September 18, 1981 Smiths' counsel are directed to apprise the Court (with a courtesy copy to Woodstock's counsel) whether they intend this action to proceed against defendant Boe and, if so, what steps they have taken in that regard.

---

**6.** Smiths raise another "public policy" argument for the non-dismissal of the Commodity Exchange Act claims, on the theory that this Court would have to consider the common law counts anyway (this is essentially the "might as well be hung for a sheep as for a lamb" theory of jurisprudence). Principles quoted in the text from *Federated* reject the notion of such vague "public policy" exceptions to res judicata. Dismissal of the Commodity Exchange Act claims, which could and should have been asserted in the California action, comports with the important public policy that res judicata itself serves. In any case, collapse of the common law counts on res judicata grounds carries with it the collapse of Smiths' theory.