### Ex Parte John Joseph GAUDION, Relator.

#### No. 13642.

Court of Appeals of Texas, Austin.

Feb. 3, 1982.

---

Terral R. Smith, Schaubhut, Smith & O'Meara, Austin, for relator.

James W. George, George & George, Austin, for respondent.

PHILLIPS, Chief Justice.

Relator is subject to confinement by virtue of a commitment issued by the district court of Travis County, whereby he was adjudged in contempt of the court for the alleged violation of an order of the court rendered August 8, 1979, ordering relator to pay his former wife, Prudence Gaudion, a portion of his gross monthly military retirement pay, based on a formula set out in the order. Upon presentation of relator's petition, this Court granted a writ of habeas corpus and ordered relator released on bond. After hearing, we now order relator remanded to the custody of the Sheriff of Travis County.

The issue before us is whether *McCarty v. McCarty*, 453 U.S. 210, 101 S.Ct. 2728, 69 L.Ed.2d 589 (1981), should be applied retroactively to final judgments which were based on prior Texas law, as set out in *Taggart v. Taggart*, 552 S.W.2d 422 (Tex. 1977); *Cearly v. Cearly*, 544 S.W.2d 661 (Tex.1976); *Dominey v. Dominey*, 481 S.W.2d 473 (Tex.Civ.App.—El Paso 1972), *cert. denied*, 409 U.S. 1028, 93 S.Ct. 462, 34

L.Ed.2d 321 (1972); and *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970).

The divorce judgment that relator is collaterally attacking in this proceeding is a final judgment, all avenues of appeal having been exhausted. *Gaudion v. Gaudion*, 601 S.W.2d 805 (Tex.Civ.App.—Austin 1980, no writ).

*McCarty*, cited above, holds state courts are without authority to divide, apportion, or to in any way interfere with a military person's retirement income. Relator argues the prior division of his military income in the divorce proceeding, described above, is void. He bases his argument, principally, on *Kalb v. Feuerstein*, 308 U.S. 433, 60 S.Ct. 343, 84 L.Ed. 370 (1940) and *Ex parte Buckhanan*, 626 S.W.2d 65 (Tex.App.—San Antonio, October 15, 1981, not yet reported).[1] In our judgment, *Kalb* is not on point, as it is clearly distinguishable from the case at bar, and, although *Ex parte Buckhanan* is directly on point, we decline to follow it for reasons hereinafter presented.[2]

*Kalb* was a bankruptcy case in which a state court clearly disregarded federal law and allowed a foreclosure of real property after a petition for bankruptcy was on file. Bankruptcy has always been reserved for the exercise of Federal authority and the holding in *Kalb* is inapposite to the case at bar. Indeed, *Kalb*, is a matter of the direct preemption of a state decision and not a question, as we have here, of whether a subsequent overruling decision, declaring a federal preemption exists, should be applied retroactively to final judgments which the court clearly had jurisdiction to make when rendered. *Dominey v. Dominey, supra.*

In addition to basing its decision on *Kalb*, the court in *Ex parte Buckhanan* relies on *Ex parte Johnson*, 591 S.W.2d 453 (Tex. 1979). *Johnson* was not a case in which the doctrine of retroactivity was applied, but rather the Texas Supreme Court chose to analyze the case on preemption grounds.

1. See also, *Ex parte Acree*, 623 S.W.2d 810 (Tex.App.—El Paso, November 25, 1981).

2. We notice that another panel of the San Antonio court recently held that *McCarty* should

*not* be applied retroactively. *Ex parte Rodriguez*, No. 04–00333–CV (Tex.App.—San Antonio, December 10, 1981, not yet reported).

The federal statute, there involved, was quite clear in stating that Veterans Administration benefits were a personal entitlement and not the result of an earned property right. The statute stated "... such payments shall be exempt from the claim of creditors, and shall not be liable to attachment, levy or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary."

In the pre-*McCarty* decision in *Gaudion v. Gaudion*, 601 S.W.2d 805 (Tex.Civ.App.— Austin 1980, no writ), this Court held there was no such express preemption in the federal statutes governing military retirement benefits and none was implied. Also, the Texas Supreme Court in *Burson v. Burson*, 615 S.W.2d 192 (Tex.1981), expressly distinguished the military retirement statutes from those governing V.A. benefits, citing *Gaudion*.

We will follow that line of decisions handed down by the United States Supreme Court, such as *Linkletter v. Walker*,[3] 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), which deal specifically with the problems involved in applying a law retroactively.

In *Linkletter*, the issue was whether the exclusionary evidence rule made applicable to the states in *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), should be made retroactive to cases decided prior to *Mapp*, those cases having followed the previous rule set out in *Wolf v. Colorado*, 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949). *Wolf* held the exclusionary evidence rule did not apply to the states. In *Mapp, Wolf* was overruled and the exclusionary rule, with its far-reaching effect in the area of search and seizure law and the attendant constitutional rights of individuals accused of crime, was made directly applicable to state courts. The *Linkletter* doctrine applies to the constitutional area of the law, as well as to long-established common law rules, the criminal and the civil

law. *Linkletter* weighs the factors, involved such as the prior history of the rule in question, and then determines whether retroactive operation will further or retard its operation. The doctrine also considers the purpose of the overruling decision, the reliance placed on the previous decisional law, and the effect on the administration of justice of a retroactive application of the overruling decision.

The *rationale* in *McCarty* for protecting military retirement was to make the military more attractive to those persons enlisting in *the future*. To apply *the ruling* to those now retired would in no way further the purpose of the decision. Moreover, in relitigating previous divorces, the Texas courts would be faced with piecing together lost, dispersed, used and possibly wasted assets, in an attempt to decide how best to redistribute the marital property. Finally, those cases in which the military retirement benefits were the sole substantial asset of the marriage would need to be handled by money judgments, assuming such would ever be collectible by the non-military ex-spouse.

The court, in *Linkletter* quoted Justice Holmes saying "[t]he life of the law has not been logic; it has been experience." 381 U.S. at 627, 85 S.Ct. at 1736. The court then observed "... that the existence of the *Wolf* doctrine prior to *Mapp* is an operative fact and ... cannot be ignored;" "the thousands of cases that were finally decided on *Wolf* cannot be obliterated;" "[t]o make ... *Mapp* retroactive would tax the administration of justice to the utmost." Id. 367 U.S. at 636, 85 S.Ct. at 1741.

A propos to our decision is the emphasis that the present United States Supreme Court places on the doctrine of *res judicata*. In *Federated Department Stores v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981), the Supreme Court stated:

a final judgment on the merits of an action precludes the parties or their priv-

---

**3.** *Chevron Oil Company v. Huson*, 404 U.S. 97, 92 S.Ct. 349, 30 L.Ed.2d 296 (1971); *Chicot County Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329 (1940);

*Great Northern Ry. Co. v. Sunburst Oil and Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932).

ies from relitigating issues that were or could have been raised in that action." *Commissioner v. Sunnen*, 333 U.S. 591 [68 S.Ct. 715, 92 L.Ed. 898] (1948); *Cromwell v. County of Sac*, 94 U.S. 351 [24 L.Ed. 195] (1877). 'Nor are the *res judicata* consequences of a final unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principal subsequently overruled in another case.' *Angel v. Bullington*, 330 U.S. 183 [67 S.Ct. 657, 91 L.Ed. 832] (1947). 'As this Court explained in *Baltimore Steamship Co. v. Phillips*, 274 U.S. 316, 325 [47 S.Ct. 600, 604, 71 L.Ed. 1069] (1927) an erroneous conclusion reached by the court in the first suit does not deprive the defendants in the second action of their right to rely upon the plea of *res judicata.* . . . A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause of action.' We have observed that the indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judgments, consequences which it was the very purpose of the doctrine of *res judicata* to avert. *Reed v. Allen*, 286 U.S. 191 [52 S.Ct. 532, 76 L.Ed. 1054] (1932). 101 S.Ct. at 2427.

A recent case pertaining to Texas law is *Erspan v. Badgett*, 659 F.2d 26 (5th Cir. 1981), where the court refused the retroactive application of *McCarty* in a Texas divorce case. This result in all likelihood would have been followed by the Texas Supreme Court in *Trahan v. Trahan*, 626 S.W.2d 485 (Tex.1981), if the judgment in that case had not been on appeal when *McCarty* was handed down. See also *Williams v. Williams*, 620 S.W.2d 748 (Tex.Civ. App.1981, writ ref'd n. r. e.).

Finally, we must point out all other jurisdictions which have ruled on the retroactivity of *McCarty* to date have expressly refused to apply *McCarty* retroactively to invalidate prior final divorce decisions which divided military retirement benefits. *See*

*Erbe v. Eady*, 406 So.2d 936 (Ala.Civ.App., 1981); *Braden v. Reno*, 8 Fam.L.Rep. 2041 (Idaho–4th Dist.Ct.1981); *Mahone v. Mahone*, 123 Cal.App.3d 17, 176 Cal.Rptr. 274 (Cal.Ct.App.1981); *Fellers v. Fellers*, 125 Cal.App.3d 254, 178 Cal.Rptr. 35 (Cal.Ct. App.1981); *Sheldon v. Sheldon*, 124 Cal. App. 371, 177 Cal.Rptr. 380 (Cal.Ct.App. 1981).

Relator is remanded to the custody of the Sheriff of Travis County.