4 F.3d 875
 Kenneth Ralph KNOX, a minor suing By and Through his next
friend and guardian, Mary HAGBERG, and Ralph Knox
and Mary Hagberg, individually,
Plaintiffs-Appellees,
v.
LEDERLE LABORATORIES, A DIVISION OF AMERICAN CYANAMID
COMPANY, a Maine corporation, Defendant,
and
Wyeth Laboratories, a division of American Home Products
Corporation, a Delaware corporation, Defendant-Appellant.
 No. 92-1341.
 United States Court of Appeals,
Tenth Circuit.
 Sept. 8, 1993.
 
 Charles L. Casteel of Davis, Graham & Stubbs, Denver, CO (Karen L. Page of Davis, Graham & Stubbs, and Hedy M. Powell of Wyeth-Ayerst Laboratories, Philadelphia, PA, with him on the briefs), for defendant-appellant.
 Nathan L. Stone of Neuman & Cobb, Boulder, CO (Clifford L. Neuman of Neuman & Cobb, and Michael R. Hugo of Conway, Crowley & Hugo, Boston, MA, with him on the brief), for plaintiffs-appellees.
 Before McKAY, Chief Judge, SETH and MOORE, Circuit Judges.
 McKAY, Chief Judge.
 
 
 1
 Appellant Wyeth Laboratories brings this interlocutory appeal pursuant to 28 U.S.C. Sec. 1292(b) (1988) from the denial of its motion for summary judgment on grounds of claim preclusion.[1] We affirm.
 
 
 2
 * In 1986, Plaintiffs filed in Colorado state district court a product liability action against Wyeth, Lederle Laboratories, and Connaught Laboratories. We will refer to this earlier case as "Knox I." Plaintiffs claimed that a vaccine manufactured by one of the defendants in Knox I caused severe injuries to the minor Plaintiff, Kenneth Knox.
 
 
 3
 After discovery, Wyeth moved for summary judgment based on an affidavit from a pharmacist that, according to the pharmacist's records, Wyeth could not have manufactured the vaccine administered to Kenneth. The district court granted Wyeth's motion and subsequently granted Plaintiffs' motion for partial summary judgment against Lederle, relying on the same affidavit. Judgment was not actually entered on the motion, however.
 
 
 4
 After these summary judgment motions were decided, Wyeth ceased to participate in the case. It did not receive further pleadings or motions. On the other hand, neither did Wyeth seek a final judgment under Colo.R.Civ.P. 54(b).
 
 
 5
 In December of 1989, Plaintiffs decided to pursue a claim under the National Vaccine Injury Compensation Program (NVICP), 42 U.S.C. Sec. 300aa-10 to -34 (1988), prior to continuing their suit. They invoked their right under 42 U.S.C. Sec. 300aa-11(a)(5)(A) (1988) to dismiss Knox I without prejudice and brought a claim under the NVICP. Wyeth received no notice of this dismissal and is not listed in the caption of the order dismissing the case without prejudice.
 
 
 6
 The United States Court of Claims denied Plaintiffs any compensation. Knox v. Secretary of the Dep't of Health & Human Servs., No. 90-33Y, 1991 WL 33242, 1991 U.S.Cl.Ct. Lexis 75 (Cl.Ct. Feb. 22, 1991). Pursuant to 42 U.S.C. Sec. 300aa-21 (1988), Plaintiffs then elected to reject the resolution under the NVICP and file a new suit in Colorado state court. This present action ("Knox II ") was removed to federal court on the basis of diversity of citizenship.
 
 
 7
 Initially, Plaintiffs only sued Defendant Lederle. When they sought to reimpose summary judgment on Lederle as the manufacturer of the vaccine that injured Kenneth Knox, Lederle produced a new affidavit from the same pharmacist, stating that newly discovered records forced him to recant his prior affidavit. The district court denied Plaintiffs' motion for summary judgment.
 
 
 8
 Plaintiffs then rejoined Wyeth, which immediately filed a motion for summary judgment on res judicata grounds. The district court denied the motion, but granted Wyeth leave to file an interlocutory appeal under 28 U.S.C. Sec. 1292(b). We accepted the appeal.
 
 II
 
 9
 We review the trial court's action on a motion for summary judgment de novo. Clark v. Haas Group, Inc., 953 F.2d 1235, 1237 (10th Cir.), cert. denied, --- U.S. ----, 113 S.Ct. 98, 121 L.Ed.2d 58 (1992). Because this case concerns a judgment of the Colorado state courts, we look to Colorado law. 28 U.S.C. Sec. 1738 (1988).
 
 
 10
 The initial matter to be determined is the final status of Plaintiffs' claim against Wyeth in Knox I. Wyeth claims that its summary judgment in Knox I became final with the dismissal of the other parties without prejudice in an order to which it was not a party. We conclude that Wyeth was a party to the order that dismissed Knox I without prejudice.
 
 
 11
 * Rule 54(b) of the Colorado Rules of Civil Procedure, which is identical to the federal rule, states:
 
 
 12
 When more than one claim for relief is presented in an action, whether as a claim, counter-claim, cross-claim or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claim or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims, or parties and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.
 
 
 13
 Colo.R.Civ.P. 54(b) (emphasis added). Wyeth never requested the district court to issue a final judgment as to it. Therefore, under the plain language of Rule 54(b), Wyeth remained a party to the action when Plaintiffs sought to dismiss without prejudice.
 
 B
 
 14
 Wyeth argues that even if it was still a party to the action, the dismissal without prejudice did not apply to Plaintiffs' claims against it. It states that "[P]laintiffs assert that they unilaterally dismissed 'their action,' i.e., all of their claims in Knox I [,] ... without addressing the undisputed fact that it was only their claims against Lederle that were dismissed by stipulation before their pursuit of Vaccine Program remedies." (Appellant's Reply Br. at 2.) The texts of the relevant documents do not support Wyeth's argument.
 
 
 15
 The dismissal without prejudice reads as follows:
 
 
 16
 UPON STIPULATION of the parties to this action and consideration of all issues it is hereby ORDERED that this case be DISMISSED on this date, WITHOUT PREJUDICE and WITHOUT COSTS.
 
 
 17
 ....
 
 
 18
 It is FURTHER ORDERED that this DISMISSAL constitutes a WITHDRAWAL of this Civil Action as contemplated by the National Childhood Vaccine Injury Compensation Act of 1986, 42 U.S.C. Sec. 300aa-11.
 
 
 19
 (Appellant's App. at 30-31.) Title 42 U.S.C. Sec. 300aa-11(a)(5)(A) in turn states:
 
 
 20
 A plaintiff who on October 1, 1988 has pending a civil action for damages for a vaccine-related injury or death may, at any time within 2 years after October 1, 1988, or before judgment, whichever occurs first, elect to withdraw such action without prejudice and file a petition under [the NVICP].[2]
 
 
 21
 Id.
 
 
 22
 Neither the dismissal nor the statute refers to individual claims. Rather, the dismissal refers to the dismissal of the "case," while the statute refers to the withdrawal of the "action." As Colo.R.Civ.P. 54(b) makes clear, an action is made up of one or more claims.[3] Thus, the order dismissing the case without prejudice under the authority of Sec. 300aa-11(a)(5)(A) dismissed the case in its entirety without prejudice, including the claims against Wyeth.
 
 III
 
 23
 Wyeth argues even if it was a party to the order dismissing the case without prejudice, the order is void for failure to provide it with notice of the motion to dismiss. First, it claims that under Colo.R.Civ.P. 41, the Knox I court was without power to dismiss the action without providing it with notice. It cites Thompson v. McCormick, 138 Colo. 434, 335 P.2d 265 (1959), for the proposition that "[a] judgment of dismissal ... entered without notice is void and is subject to direct or collateral attack." Id. 335 P.2d at 269; see also Maxwell v. W.K.A. Inc., 728 P.2d 321, 323 (Colo.Ct.App.1986) ("it is error for the court to dismiss where ... there is not notice or hearing on whether there is justifiable cause for dismissal"). It also argues that even if Sec. 300aa-11 overrode the ordinary rules regarding dismissals without prejudice, the dismissal of Knox I was unwarranted because Sec. 300aa-11 authorizes dismissals without prejudice only before "judgment." 42 U.S.C. Sec. 300aa-11(a)(5)(A). In Wyeth's view, its victory on summary judgment constitutes a "judgment" within the meaning of Sec. 300aa-11(a)(5)(A).
 
 
 24
 * An initial question in this instance is what effect a successful collateral attack on the dismissal in Knox I would have on the preclusion issue presently before this court. Wyeth claims that because the dismissal without prejudice is void, Wyeth was dismissed from Knox I with prejudice. However, the very cases that Wyeth cites in support of its collateral attack show that even if the collateral attack is successful, Wyeth would still not have the final judgment it seeks. Rather, they clearly state that the collateral attack would merely serve to re-open Knox I. See Thompson, 335 P.2d at 270; Maxwell, 728 P.2d at 324. Were Knox I to be re-opened, Wyeth would merely have an order that is based on a now-recanted affidavit and is "subject to revision at any time before entry of judgment." Colo.R.Civ.P. 54(b).
 
 
 25
 The cases Wyeth cites to avoid this proposition are not persuasive. The first, Columbia Savings & Loan Ass'n v. District Court, 186 Colo. 212, 526 P.2d 661 (1974), merely holds that once a case has been dismissed without prejudice, the parties to it are no longer within the jurisdiction of the court. Id. 526 P.2d at 664. We do not see how this unsurprising proposition supports Wyeth's argument that the dismissal without prejudice of the case, which was allegedly void as to Wyeth, converted Wyeth's preliminary victory on summary judgment into a judgment on the merits.
 
 
 26
 The second case, Perington Wholesale, Inc. v. Burger King Corp., 631 F.2d 1369 (10th Cir.1979), states in a footnote that the dismissal with prejudice of an entire suit, which made explicit reference to some claims but not others, automatically functioned to dismiss the unmentioned claims with prejudice under Fed.R.Civ.P. 12(b)(6). Perington, 631 F.2d at 1370 n. 1. If anything, this case supports Plaintiffs' position, as it suggests that the dismissal without prejudice of the other parties would automatically apply to claims and parties not mentioned. Thus, we conclude that the rule Wyeth asks us to adopt is without precedent or support in the case law of Colorado or this court. We see no basis to conclude that Colorado would adopt such a rule.
 
 
 27
 Wyeth's arguments on collateral attack cannot bring it the final judgment it seeks. Rather, at best Wyeth would have a preliminary decision in a re-opened case based on a recanted affidavit.
 
 B
 
 28
 Wyeth claims that even if it does not have a final judgment, it is still entitled to preclude Knox II based on the original order on summary judgment. It cites Carpenter v. Young, 773 P.2d 561 (Colo.1989) for the proposition that a preliminary order on summary judgment can support preclusion. This argument fails for several reasons.
 
 
 29
 First, in Carpenter, the Supreme Court of Colorado adopted Sec. 13 of the Restatement (Second) of Judgments (1982) [hereinafter Second Restatement], which addresses the circumstances under which a preliminary order will support preclusion. Carpenter, 773 P.2d at 568. Section 13 clearly states: "The rules of res judicata are applicable only when a final judgment is rendered. However, for purposes of issue preclusion (as distinguished from [claim preclusion], 'final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect." Carpenter, 773 P.2d at 567 (quoting Second Restatement Sec. 13). Since Wyeth seeks to invoke claim preclusion, its lack of a final judgment is conclusive.
 
 
 30
 Second, even if Wyeth were to seek to invoke issue preclusion, the dismissal of Knox I without prejudice would prevent it from succeeding, regardless of the outcome of its collateral attack. Assuming the dismissal is valid, Wyeth's path is blocked by Comment f of Sec. 13. Comment f acknowledges that "[a] judgment otherwise final for purposes of the law of res judicata is not deprived of such finality by the fact that time still permits commencement of proceedings in the trial court to set aside the judgment and grant a new trial or the like...." Nevertheless, Comment f clearly states that "[t]he judgment ceases to be final if it is in fact set aside by the trial court...." If the dismissal was valid, the order on summary judgment was set aside by the dismissal of the action without prejudice. The order would therefore not be a final judgment for purposes of issue preclusion.
 
 
 31
 On the other hand, assuming Wyeth were to succeed in reopening Knox I, the preliminary order granting summary judgment would still not be "sufficiently firm" to support issue preclusion under Colorado law. Without discussing in detail the definition of "sufficiently firm" under Colorado law, see Carpenter, 773 P.2d at 567-68, we do not believe that a preliminary order on summary judgment based on a recanted affidavit and subject to revision at any time should be viewed as firm at all.
 
 
 32
 We hold that regardless of whether Wyeth's collateral attack on Knox I were to succeed, it would not possess a judgment that was final for res judicata purposes. We therefore do not reach the merits of Wyeth's collateral attack.
 
 C
 
 33
 In essence, Wyeth is arguing that even if there was no final judgment, the facts that it had no notice and that it had a favorable preliminary decision on summary judgment should allow it to invoke claim preclusion. Thus, Wyeth is asking us to fashion an exception to the established limitation on issue preclusion that requires a final judgment.
 
 
 34
 Wyeth's request is not without precedent. The Second Restatement repeatedly "leaves the door open" to novel exceptions to the limitations on issue preclusion. See, e.g., Second Restatement Sec. 26 cmt. b (a suit which was dismissed without prejudice "ordinarily" should not support preclusion). However, we are of the view that the creation, years after the prior judgment, of novel doctrines to invoke preclusion is an unwise practice.
 
 
 35
 Preclusion is a drastic step, which grants summary judgment against a party whose allegations are to be taken as true. See Anderson v. Liberty Lobby, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513-14, 91 L.Ed.2d 202 (1986) (evidence of non-movant to be taken as true on summary judgment). Further, as one commentator has eloquently stated, "the first lesson one must learn in the subject of res judicata is that judicial findings must not be confused with absolute truth." Brainerd Currie, Mutuality of Collateral Estoppel: Limits of the Bernhard Doctrine, 9 Stan.L.Rev. 281, 315 (1957). Thus, in fashioning a new rule of preclusion, a court must do so on the assumption that it will preclude parties whose claims are just.
 
 
 36
 Invoking preclusion based on new, unforeseeable doctrines also is deeply unfair. Courts have generally dismissed the pleas of precluded parties with the ancient maxim that "[t]he predicament in which [they find themselves] is of [their] own making." Reed v. Allen, 286 U.S. 191, 198, 52 S.Ct. 532, 533, 76 L.Ed. 1054 (1932). This maxim does not apply when the party could not have foreseen that its actions would lead to preclusion. Similarly, the finality concerns for reliance and repose, which are invoked to justify claims that reopening old matters would be unfair to the other party, do not apply if no one had a legitimate reason to believe that preclusion would apply. While the summary judgment did give Wyeth some reason to believe the suit was over as to them, the plain language of Colo.R.Civ.P. 54(b) puts the risk that the preliminary opinion would be vacated squarely on Wyeth. Having failed to move for a separate judgment under Rule 54(b), Wyeth had no legitimate basis for reliance or repose.
 
 
 37
 Finally, while invoking preclusion based on an unforeseeable doctrine does efficiently dispose of one case, it tends to lead to two highly inefficient results. One is the over-litigation that may arise when parties are unsure if they may subsequently be surprised by preclusion. The second is the cost of litigating attempts to invoke novel preclusion doctrines. This case is a compelling example of the second result. Thus, while money is clearly saved in the case that is unforeseeably precluded, it is very likely that the exercise will raise overall litigation expenses in the long run.
 
 
 38
 In the classic case of The Evergreens v. Nunan, 141 F.2d 927 (2d Cir.), cert. denied, 323 U.S. 720, 65 S.Ct. 49, 89 L.Ed. 579 (1944), Judge Learned Hand established the now-accepted proposition that parties may relitigate tangential issues if they could not foresee the issues' subsequent importance at the time of the first suit. Id. at 928-30. This suggestion might apply, for instance, when an unforeseeable change in substantive law makes a tangential fact critical. Second Restatement Sec. 28(5) cmt. i. We see no reason why unforeseeable preclusion caused by a change in the law of res judicata should be accepted while unforeseeable preclusion caused by a change in the substantive law is not.
 
 
 39
 In short, we conclude that to invoke preclusion based on new, unforeseeable doctrines of res judicata undermines the accuracy function of the courts; is fundamentally unfair; and potentially will lead to increased, rather than reduced, litigation costs.[4] We acknowledge that Wyeth had some basis for believing it could rely on the prior summary judgment and that the burden of relitigating this issue after all these years may be substantial. But we conclude that what the Supreme Court stated years ago in the context of invoking preclusion is equally applicable to denying it. "[W]e can not be expected, for [Wyeth's] sole relief, to upset the general and well-established doctrine of res judicata.... [T]he mischief which would follow the establishment of precedent for so disregarding [the rules of preclusion] would be greater than the benefit which would result from relieving some case of individual hardship." Reed, 286 U.S. at 198-99, 52 S.Ct. at 533 (1932).IV
 
 
 40
 We AFFIRM the order of the district court denying summary judgment on the basis of claim preclusion.
 
 
 
 [1]
 In its statement of the issue presented for review, Wyeth refers to what it seeks as the invocation of "res judicata." (Appellant's Br. at 2.) It subsequently identifies res judicata with "claim preclusion."
 The Supreme Court has adopted a more modern terminology which we will use in this opinion. Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 77, 104 S.Ct. 892, 894, 79 L.Ed.2d 56 (1981); see also 18 Charles A. Wright et al., Federal Practice and Procedure Sec. 4402. We will refer to the doctrines of merger and bar as "claim preclusion," and to collateral estoppel as "issue preclusion." We will use "res judicata" to refer collectively to both claim preclusion and issue preclusion.
 
 
 [2]
 The dismissal was final on December 13, 1989. Six days later, the amendments to Sec. 300aa-11(a)(5)(A) were passed as part of the Omnibus Budget Reconciliation Act of 1989, Pub.L. No. 101-239, Sec. 6601(c)(3)(A), 103 Stat. 2106, 2285 (Dec. 19, 1989). These amendments required the plaintiff to "petition" to have the case dismissed without prejudice. Because there is no indication in the law that the changes in the procedures for filing the petitions are to have retroactive effect, see id. Sec. 6601(s)(1), these changes are not relevant for purposes of this case. We therefore express no opinion as to whether these amendments would alter any of the conclusions we draw in this opinion
 
 
 [3]
 For example, the rule opens by referring to situations "[w]hen more than one claim for relief is presented in an action." Id
 
 
 [4]
 Considerations are quite different when novel doctrines of preclusion are used to defeat, rather than invoke, preclusion. In that situation, there will be a full trial on the merits, so there is no risk to the accuracy function. Similarly, there is no risk of overlitigation. Finally, when the equities are profoundly against the party seeking to invoke preclusion, society places little value on that party's claims of reliance and repose. Thus, flexible exceptions to the law of preclusion are occasionally necessary. See, e.g., Christian v. Jemison, 303 F.2d 52, 54-55 (5th Cir.), cert. denied, 371 U.S. 920, 83 S.Ct. 287, 9 L.Ed.2d 229 (1962); Spilker v. Hankin, 188 F.2d 35, 38-39 (D.C.Cir.1951)